UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ----------X
ROXANA AGUILO, STEVEN HARRIS, CHRISTINA
GAYLE, JOHN PAGAN, PATRICIA TAVERAS
DOMINGO BENCOSME, MAYUMI WATSON and
BLANCA CRUZ, on behalf of themselves and all similarly
situated individuals,

|  |  |
|---|---|
| Plaintiffs, | SECOND AMENDED COMPLAINT |
| - against - | Civil Action No. 1:22-cv-09204 |
| THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT, | PLAINTIFFS DEMAND TRIAL BY JURY |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -------------- X

## COMPLAINT

Plaintiffs ROXANA AGUILO, STEVEN HARRIS, CHRISTINA GAYLE, JOHN

PAGAN, PATRICIA TAVERAS, DOMINGO BENCOSME, MAYUMI WATSON and

BLANCA CRUZ, through undersigned counsel, sue Defendants, THE CITY OF NEW YORK

and NEW YORK CITY POLICE DEPARTMENT, and allege the following upon information

and belief:

### NATURE OF THE ACTION

1.     Roxana Aguilo ("Ms. Aguilo" or "Plaintiff") is deaf and communicates through American

Sign Language. This action is on behalf of Ms. Aguilo for declaratory and injunctive relief and

monetary damages to redress the injuries Ms. Aguilo has suffered as a result of being discriminated

against by Defendants on the basis of disability, record of disability and/or perceived disability

under the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act, New

York State Human Rights Law and the New York City Human Rights Law, to remedy injuries

Plaintiff has suffered as a result of being discriminated against, and deprived of public service and

public accommodations due to her disability. Ms. Aguilo had encounters with police when she was in a car accident. She was not provided with an interpreter at the scene of the accident. Thereafter, Plaintiff went to the police station to file a report and was not provided an interpreter. Without effective communication Plaintiff had little ability to understand her interactions with police officials and the facts listed in the accident report were incorrect. The Complaint states causes of action under federal, state, and city law for deprivations of civil rights and states common law causes of action for tort.

2.    Steven Harris and Christina Gayle ("Mr. Harris" and Ms. Gayle or "Plaintiffs") are deaf and communicate through American Sign Language. This action is on behalf of Mr. Harris and Ms. Gayle for declaratory and injunctive relief and monetary damages to redress the injuries Mr. Harris and Ms. Gayle have suffered as a result of being discriminated against by Defendants on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law, to remedy injuries Plaintiffs have suffered as a result of being discriminated against, and deprived of public services and public accommodations due to their disability. Mr. Harris was in multiple car accidents. Prior to police arriving on the scene of the accidents, Mr. Harris and Ms. Gayle called the police to report the accident and to request an interpreter to arrive so they could communicate. Despite requests, an interpreter was not brought on scene at any of the car accidents. The complaint states causes of action under federal, state, and city law for deprivations of civil rights and states common law causes of action for tort.

3.    John Pagan ("Mr. Pagan" or "Plaintiff") is deaf and communicates through American Sign Language. This action is on behalf of Mr. Pagan for declaratory and injunctive relief and monetary damages to redress the injuries Mr. Pagan has suffered as a result of being discriminated against

by Defendants) on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA "); Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law, to remedy injuries Plaintiff has suffered as a result of being discriminated against, and deprived of public services and public accommodations due to his disability. Mr. Pagan was in a car accident. Plaintiff asked the police officer to provide an interpreter. The officer refused to provide an interpreter. Plaintiff was unable to accurately explain the details of the car accident without an interpreter present. The complaint states causes of action under federal, state, and city law for deprivations of civil rights and states common law causes of action for tort.

4.   Patricia Taveras ("Ms. Taveras" or "Plaintiff") is deaf and communicates through American Sign Language. This action is on behalf of Ms. Taveras for declaratory and injunctive relief and monetary damages to redress the injuries Ms. Taveras has suffered as a result of being discriminated against by Defendants on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA "); Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law, to remedy injuries Plaintiff has suffered as a result of being discriminated against, and deprived of public services and public accommodations due to her disability. Ms. Taveras was in a car accident. Plaintiff was unable to accurately explain details of the car accident without an interpreter present. The complaint states causes of action under federal, state, and city law for deprivations of civil right and states common law causes of action for tort.

5.   Domingo Bencosme ("Mr. Bencosme" or "Plaintiff") is deaf and communicates through American Sign Language. This action is on behalf of Mr. Bencosme for declaratory and injunctive relief and monetary damages to redress the injuries Mr. Bencosme has suffered as a result of being

discriminated against by Defendants on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA "); Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law, to remedy injuries Plaintiff has suffered as a result of being discriminated against, and deprived of public services and public accommodations due to his disability. Plaintiff had an interaction with police regarding his license plate. Plaintiff also was not given an interpreter to understand the situation. The complaint states causes of action under federal, state, and city law for deprivations of civil right and states common law causes of action for tort.

6.   Mayumi Watson ("Ms. Watson" or Plaintiff) is deaf and communicates through America Sign Language. This action is on behalf of Ms. Watson for declaratory and injunctive relief and monetary damages to redress the injuries Ms. Watson has suffered as a result of being discriminated against by Defendants on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA "); Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law, to remedy injuries Plaintiff has suffered as a result of being discriminated against, and deprived of public services and public accommodations due to her disability. Ms. Watson had an incident in her home involving her daughters getting into a fight, and one of them getting arrested. Plaintiff was unable to accurately explain details of the argument without an interpreter present. The complaint states causes of action under federal, state, and city law for deprivations of civil right and states common law causes of action for tort.

7.   Blanca Cruz ("Ms. Cruz" or Plaintiff) is deaf and communicates through America Sign Language. This action is on behalf of Ms. Cruz for declaratory and injunctive relief and monetary damages to redress the injuries Ms. Cruz has suffered as a result of being discriminated against by Defendants on the basis of disability, record of disability and/or perceived disability under the

Americans with Disabilities Act ("ADA "); Section 504 of the Rehabilitation Act, New York State

Human Rights Law and the New York City Human Rights Law, to remedy injuries Plaintiff has

suffered as a result of being discriminated against, and deprived of public services and public

accommodations due to her disability. Ms. Cruz was involved in incidents in her home with respect

to a family member where on many occasions there were calls that were made to the police to respond

to domestic issues. Plaintiff was unable to accurately explain details of the domestic incidents

involving the family member without an interpreter present. The complaint states causes of action

under federal, state, and city law for deprivations of civil right and states common law causes of

action for tort.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in

that this action arises under federal law, including the Americans with Disabilities Act ("ADA")

42 U.S.C. § 12101 *et seq*. and Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. §794 *et seq*.

9.  Plaintiffs invoke the pendant jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966)

and 28 U.S.C. § 1367(a) for state law claims of the New York State Human Rights Law and New

York City Human Rights Law.

10. The Plaintiffs, ROXANNA AGUILO, STEVEN HARRIS and CHRISTINA GAYLE,

JOHN PAGAN, PATRICIA TAVERAS, DOMINGO BENCOSME, MAYUMI WATSON and

BLANCA CRUZ bring this action under state and federal laws seeking compensatory damages, injunctive

relief, and attorney's fees for the Defendant City of New York's violation of their rights afforded by the United

States and New York Constitution and under the laws of The State of New York and the City of New York

11. The venue of this action is properly placed in the Southern District of New York pursuant to

28 U.S.C. § 1391(b)(2) because the events having operative significance in this case which give rise

to the claims herein occurred within this District.

12. This Court has *in personam* jurisdiction over Defendants because they are located in, conduct operations within, transact business in and provide services within the City of New York.

## PARTIES

13. Plaintiff Roxana Aguilo is a resident of the State of New York whose address is 2163 Morris Ave, Apt. 3D, Bronx NY 10453.

14. Plaintiffs Steven Harris and Christina Gayle are residents of the State of New York and reside at 3285 Rombouts Ave, Apt. 3C, Bronx, NY 10475.

15. Plaintiff John Pagan is a resident of the State of New York and resides at 1290 Rodman Place, Apt. 10H, Bronx, NY 10460.

16. Plaintiff Patricia Taveras is a resident of the State of New York and resides at 1515 Grand Concourse, Apt. 5K, Bronx, NY 10452.

17. Plaintiff Domingo Bencosme resided at 603 west 191st street, Apt. 38, New York, New York at the time of his incident. He presently resides in the State of Florida.

18. Plaintiff Mayumi Watson resides at 2913 Seymour Ave, Ground floor, Bronx, New York 10469

19. Plaintiff Blanca Cruz resides at 354 West 48th Street, Apartment 1R, New York, New York 10036.

20. At all times material herein, defendant THE CITY OF NEW YORK ("CITY OF NEW YORK"), was and still is a duly incorporated municipality of the State of New York, County of New York, whose seat of governance was and still is located at 1 Centre Street, New York, New York 10007.

21. At all times material herein, defendant NEW YORK CITY POLICE DEPARTMENT (hereinafter referred to as "NYPD"), is located at 1 Police Plaza, New York, New York 10038.

## MATERIAL FACTS- ROXANA AGUILO

22. At all times material herein, Plaintiff was deaf and her primary language was and remains American Sign Language.

23. Upon information and belief, on September 6, 2020 Roxana Aguilo was in a car accident. Ms. Aguilo had a green light through an intersection and was proceeding through the intersection when an ambulance came from the opposite direction and struck her car, resulting in a total loss. After being hit, the ambulance driver came over to her car. Plaintiff gestured that she could not hear him because she is deaf.

24. Shortly thereafter, an NYPD police officer arrived on scene. Plaintiff gestured that she was deaf. The police officer tried to use his phone to text with plaintiff, but plaintiff was unable to communicate effectively in this manner and requested that an interpreter be present in person or for the officer to use video remote interpreting ("VRI") on his phone. Plaintiff's requests for an interpreter were denied and plaintiff was compelled to contact her daughter by phone to have her daughter try to interpret with the police.

## MATERIAL FACTS-STEVEN HARRIS AND CHRISTINA GAYLE

25. At all times herein, Plaintiffs were deaf and their primary language was and remains American Sign Language.

26. Upon information and belief, in July 2020, Plaintiff Steven Harris was in a car accident. Police arrived shortly on the scene and attempted to communicate regarding the accident with Mr. Harris. Mr. Harris informed police that he is deaf and requested that an interpreter be present, either in person or through an app on the officer's phone. Plaintiff's requests for an interpreter were denied. Shortly thereafter, Ms. Gayle arrived on scene and also requested an interpreter. These requests were also denied and no interpreter was used, either in person or through an app.

27.  Upon information and belief, on October 10, 2020 Mr. Harris was in a car accident. After

repeated calls over hours to the NYPD for officers to respond to the accident and to request that a sign language interpreter also be present, NYPD police officers arrived on scene. Despite having been informed that plaintiff was deaf, officers made no attempt to bring an interpreter with them or to use the app on their phones for communication through an interpreter.

## MATERIAL FACTS- JOHN PAGAN

28. At all times herein, Plaintiff was deaf and his primary language was and remains American Sign Language.

29. Upon information and belief, on January 27, 2021 Plaintiff was in a car accident with his son. NYPD officers arrived on the scene of the accident, where plaintiff asked through his son to have an interpreter used for communication. Despite these requests, officers made no attempt to use a sign language interpreter either in person or through an app on their phone. Plaintiff was unable to explain to officers what happened to cause the accident and is the subject of a claim brought by the other driver.

## MATERIAL FACTS-PATRICIA TAVERAS

30. At all times herein, Plaintiff was deaf and her primary language was and remains American Sign Language.

31. Upon information and belief, on August 8, 2020 Plaintiff was in a car accident. Plaintiff was hit by another driver who ran into her as she was driving. Plaintiff called the NYPD over a period of approximately 3-4 hours requesting that they come to the scene of the accident and bring an interpreter with them as she is deaf.

32. When the NYPD officers finally showed up, they did not have an interpreter present. Plaintiff was unable to effectively communicate her side of the story regarding the accident without having an interpreter present. Although plaintiff contends that she was not at fault for the accident, without having been able to communicate this to officers, her insurance premiums have increased.

## MATERIAL FACTS- DOMINGO BENCOSME

33. At all times herein, Plaintiff was deaf and his primary language was and remains American Sign Language.

34. Upon information and belief, on January 1, 2021 Plaintiff had an interaction with NYPD officers. Plaintiff gestured to police that he was deaf and needed an interpreter. However, police ignored this request and just kept gesturing what plaintiff thought was "I.D.". Officers tookPlaintiff's I.D. and came back with a piece of paper. Plaintiff was unable to understand what the paper meant, but it appeared like a ticket, but Plaintiff did not understand, without an interpreter either in person or through a phone app, why he was receiving this paper. Plaintiff was compelled to pay a fine, but did not understand the reasons why he had to pay a fine.

## MATERIAL FACTS-MAYUMI WATSON

35.    At all times herein, Plaintiff was deaf and her primary language was and remains American Sign Language.

36.    Upon information and belief, on November 24, 2022, Mayumi Watson's two daughters, both adults, got into a fight in her home. Police officers were called to the scene. When the police arrived, they attempted to speak to Ms. Watson as a witness but she was unable to communicate with them as she is deaf. Ms. Watson requested the police officers write with her, or use her phone app for so she could communicate with them. They refused both. Ms. Watson then requested an interpreter which they also refused. Ms. Watson was unable to communicate with officers, which ultimately led to her middle daughter being arrested although she was trying to communicate to the officers that her middle daughter was not the aggressor. Everyone else present was questioned and were permitted to present their versions of the events but Ms. Watson who was precluded solely due to her disability and the police officers' failure to provide reasonable accommodation to ensure effective communication with her.

9

## MATERIAL FACTS-BLANCA CRUZ

37.     At all times herein, Plaintiff was deaf and her primary language was and remains American Sign Language.

38.     Upon information and belief, Plaintiff Blanca Cruz lives with family members. Over the years the Plaintiff and a family member have been involved in domestic disputes. At least as early as February, 2019, and before that date, calls were placed to the police as a result of domestic disputes.  Police officers would respond to the calls and arrive at Plaintiff's apartment. The police arrived at Plaintiff's apartment, for example, on the following dates in response to calls involving domestic disputes between the Plaintiff and a family member: February 16th, 2019; July 5th, 2020; August 3rd, 2020; and January 13th, 2023. When the police arrive, they attempt to speak to Ms. Cruz, but she is unable to effectively communicate with them as she is deaf. Over the years, interpreters have been requested, but despite knowing that Plaintiff is deaf, officers have made no attempt to bring an interpreter with them or to use the app on their phones for communication through an interpreter. The Plaintiff's family members have been questioned over the years, and each has had the opportunity to present their respective versions of the events. Ms. Cruz has been precluded, however, from effectively communicating her version of events solely due to her disability and due to the police officers' failure to provide reasonable accommodations to ensure effective communication with her.

## COUNT 1
## DISCRIMINATION UNDER THE
## AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

39. Plaintiffs repeat and re-allege paragraph 1-38 fully as if said paragraphs were fully set forth herein at length.

40. Defendants CITY OF NEW YORK and their agents, servants, officers, and/or employees acted under color of statute, ordinance, regulation, custom or usage of a State.

41. Defendants NEW YORK CITY POLICE DEPARTMENT and their agents, servants, officers and/or employees acted under color of statute, ordinance, regulation, custom, or usage of a State.

42. Title II of the ADA "applies to all services, programs, and activities provided by or made available by public entities." *See* 28 C.F.R. §35.130(b)(7).

43. Section 12132 of the ADA specifically states:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

44. Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) specifically states:

No otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

45. The anti-discrimination provisions of Title II of the ADA and Section 504 of the Rehabilitation Act are enforceable through implied private rights of action.

46. Plaintiffs are "qualified individuals" inasmuch as they are individuals who have a disability, deafness, and "who with or without reasonable modifications to rules, policies or practices, the removal of...communication...barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42. U.S.C. Section 12131(2).

47. Defendants CITY OF NEW YORK and NYPD are covered entities as each is a public entity.

48. Defendants police officers, who were acting in behalf of the CITY OF NEW YORK and NYPD, and who interacted with Plaintiffs, regarded each as being disabled and were aware of their deafness as evidenced by records of the NYPD. Defendants had no

emergency protocol in place as required by law to ensure effective communication with deaf individuals.

49. Plaintiffs were entitled to the same law enforcement services that Defendants CITY OF NEW YORK and NYPD provide to other non-disabled persons.

50. Plaintiffs were entitled to the benefit of lawful exercises of police actions and, including but not limited to, the right not to be unlawfully discriminated against and detained.

51. No interpreter or auxiliary communication device was provided to Plaintiffs by Defendants CITY OF NEW YORK and NYPD despite the Defendants' obligations under federal, state, and local law, as well as the CITY OF NEW YORK'S police department's settlement agreement with the United States of America to resolve claims of deaf discrimination by the New York City Police Department.

52. The CITY OF NEW YORK is further liable for the violations of the ADA and Rehabilitation Act by its employees as the CITY OF NEW YORK has official policies or customs that caused Plaintiffs to be subjected to a violation of their rights under the ADA and Rehabilitation Act as follows:

(a) The CITY OF NEW YORK has either expressly adopted a policy or developed a custom that the ADA is inapplicable to on-the-street or emergency interactions with the deaf or hard of hearing. Such policy or custom directly caused Plaintiffs' injuries herein as the accommodations the ADA requires of qualified interpreters or auxiliary communicated devices were denied to Plaintiffs during the above events and deprived them of their rights under the ADA, to wit: the policy or custom of the ADA being inapplicable to on-the-street interactions with the deaf caused the police officers who responded to Plaintiffs on the street to fail to utilize the services of a qualified interpreter or

auxiliary communication device to effectively communicate with Plaintiffs. With the advent of technology, there are applications now available in which police officers could have obtained a qualified interpreter through remote video means, even during emergency, on the street, or last-minute interactions, to ensure effective communication with deaf individuals. Yet the NYPD has failed to avail itself of these means and continue to deprive deaf and hard of hearing individuals of effective communication.

(b) The CITY OF NEW YORK failed to train its police officers on how to interact with the deaf and hearing impaired in a manner which respects their rights under the ADA and the Rehabilitation Act. The failure to train occurred in a manner evincing a deliberate indifference to the rights of the deaf and hearing impaired. Specifically, after the settlement agreement between the New York City Police Department and the United States of America in 2009, Defendants were on notice that their procedures and officer training were not satisfying their legal obligations under the ADA to the deaf and hard of hearing, and as such, Defendants were on notice that deaf persons were the subject of civil rights violations. Notwithstanding such notice and the 2009 agreement, the City has not acted in a manner to indicate that it has made changes to the training program of police officers following the agreement. This lack of training, despite notice of deficiencies, in interacting with the deaf and hard of hearing, led to the officers, who interacted with Plaintiffs, as treating them in the manner described above. The lack of training in how to interact with the deaf and hard of hearing communities resulted in the police officers who responded to Plaintiffs as failing to provide an interpreter and/or use an auxiliary communication device. Instead, such police officers verbally attempted to communicate with Plaintiffs and issued verbal orders to Plaintiffs despite the fact

that Plaintiffs could not hear and understand such orders.

53. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse consequences. Plaintiffs suffered physical injury, severe extreme humiliation, emotional pain and trauma, loss of opportunity, dignitary harm, economic damages and nominal damages, all to their detriment.

## COUNT II
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW

54. Plaintiffs repeat and reallege Paragraphs 1-53 as if said paragraphs were fully set forth herein at length.

55. All of Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiffs on the basis of their disability in violation of New York State Executive Law §296 et seq.

56. All of Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiffs on the basis of their record of disability, in violation of New York State Executive Law §296 et seq.

57. All of Defendants' acts, practices and policies described herein constitute discrimination against Plaintiffs on the basis of their perceived record of disability, in violation of New York State Executive Law §296 et seq.

58. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse consequences. Plaintiffs suffered physical injury, severe extreme humiliation, emotional pain and trauma, loss of opportunity, dignitary harm, economic damages and nominal damages, all to their detriment.

## COUNT III
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

59. Plaintiffs repeat and reallege Paragraphs 1-58 as if said paragraphs were fully set forth herein at length.

60. All Defendants' acts, practices, and policies herein constitute discrimination against Plaintiffs on the basis of their disability, in violation of the New York City Administrative Code §8-107 et seq.

61. All Defendants' acts, practices, and policies herein constitute discrimination against Plaintiffs on the basis of their record of disability, in violation of the New York City Administrative Code §8-107 et seq.

62. All Defendants' acts, practices, and policies herein constitute discrimination against Plaintiffs on the basis of their perceived record of disability, in violation of the New York City Administrative Code §8-107 et seq.

63. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse consequences. Plaintiffs suffered physical injury, severe extreme humiliation, emotional pain and trauma, loss of opportunity, dignitary harm, economic damages and nominal damages, all to their detriment.

## COUNT IV
## INJUNCTION

64. Plaintiffs repeat and reallege Paragraphs 1-63 as if said paragraphs were fully set forth herein at length.

65. Money damages are insufficient to fully address the claims set forth herein, and irreparable injury will result unless Plaintiffs are granted a permanent injunction requiring New York City Police Department's officers to provide effective communication through the use of interpreter services, whether through on-site interpreters or auxiliary communication devices, for all

interactions on the street.

66. The police officers who injured Plaintiffs as described above are officers who are assigned to the precinct that serves Plaintiffs permanent residences and as such Plaintiffs are likely to have contact in the future with this police precinct.

67. The police department provides a wide variety of public services that members of the public, including Plaintiffs, have a right to benefit from those services.

68. Plaintiffs are likely to utilize one or more of such services which include law enforcement emergency services, answering questions, and peaceful community assistance services in the future.

69. Plaintiffs are likely to be engaged in the same or similar behavior that resulted in the actions of the Defendants described above: lawfully being present on the street and not being engaged in illegal behavior and interacting with police officers from the City of New York.

70. Plaintiffs are and will in the foreseeable future remain persons of limited English proficiency who communicate effectively solely through American Sign Language.

WHEREFORE, Plaintiffs demand judgment as follows:

i.      On the First Cause of Action, a judgment against Defendants and an award of compensatory damages for emotional distress, loss of opportunity, dignitary harm, economic damages and nominal damages, punitive and/or exemplary damages, attorneys' fees and costs, pre-judgment and post-judgment interest, in an amount to be determined at trial, and further relief as this Honorable Court deems just, equitable and proper;

ii.     On the Second Cause of Action, a judgment against Defendants and an award of compensatory damages for emotional distress, loss of opportunity, dignitary harm, economic damages and nominal damages, punitive and/or exemplary damages, attorneys'

fees and costs, pre-judgment and post-judgment interest, in an amount to be determined at trial, and further relief as this Honorable Court deems just, equitable and proper;

iii.    On the Third Cause of Action, a judgment against Defendants and an award of compensatory damages for emotional distress, loss of opportunity, dignitary harm, economic damages and nominal damages, punitive and/or exemplary damages, attorneys' fees and costs, pre-judgment and post-judgment interest, in an amount to be determined at trial, and further relief as this Honorable Court deems just, equitable and proper; and

iv.    On the Fourth Cause of Action, a judgment against Defendants and a permanent injunction requiring the New York City Police Department to have proper training, policies, and procedures in place and to provide reasonable accommodations such as on-site American Sign Language Interpreters or Auxiliary Communication Devices to all deaf or hearing-impaired persons in on-the-street interaction with law enforcement, as to the City of New York or NYPD, and further relief as this Honorable Court deems just, equitable and proper.

## **JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

Dated: February 27th, 2023
     New York, New York

Respectfully submitted,

CLARA R. SMIT, ESQ.                    BRUCE J. GITLIN, ESQ.


By:  /s/ Clara R. Smit                    By: /s/ Bruce J. Gitlin
Clara R. Smit, Esq.                        Bruce J. Gitlin
100 Horizon Center Blvd                    Bruce J. Gitlin, P.C.
Hamilton, NJ  08691                        Suite 411
                                   2095 Broadway
 (732) 843-6600                            New York, NY 10023

                                   (212) 514-5437